Jeffrey L. **MAHAN**, Appellant–
Defendant,

v.

**AMERICAN STANDARD INSURANCE
COMPANY**, Appellee–Plaintiff.

No. 18A02–0601–CV–66.

Court of Appeals of Indiana.

Jan. 9, 2007.

Publication Ordered Jan. 30, 2007.

Chris M. Teagle, Muncie, IN, Attorney for Appellant.

Linda Y. Hammel, Yarling & Robinson, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Jeffrey L. Mahan appeals the trial court's denial of his motion for partial summary judgment and granting of American Standard Insurance Company's ("American") cross-motion for summary judgment.

We affirm.

### ISSUE

Whether the trial court erred in denying Mahan's motion for partial summary judgment and granting American's cross-motion for summary judgment.

### FACTS

On October 25, 2003, Mahan, who had been drinking alcohol, was driving on State Road 3 in Delaware County when he turned left in front of a vehicle being driven by Brian Hurley. Six passengers were in Hurley's vehicle: Donna Hurley, Katrina Weiss, Kyle Weiss, Brooklyn Weiss, Michael Elwood and Tracy Mc-Donald. Hurley and all six passengers sustained injuries and incurred medical expenses.

At the time of the accident, Mahan maintained automobile-insurance coverage through a policy issued by American. The policy provided liability limits for bodily injury in the amount of $50,000 per person and $100,000 per accident. The policy further provided, in relevant part, as follows: "We will defend any suit or settle any claim for damages payable under this policy as we think proper. HOWEVER, WE WILL NOT DEFEND ANY SUIT AFTER OUR LIMIT OF LIABILITY HAS BEEN PAID." (App. 23).

On December 1, 2003, Mindy Lantrip, a claim manager for American, sent Mahan a letter via certified mail. In the letter, Lantrip notified Mahan that based on the information available to American, the personal-injury damages incurred due to the accident "may result in personal exposure to [Mahan] in excess of [his] policy's liability limits." (American's App. 39). The letter also informed Mahan that he would be personally liable for any judgment in excess of his policy's liability limits rendered against him. The letter advised Mahan that he "may retain legal counsel, at [his] expense, to offer legal advice regarding the protection of [his] interests concerning any excess liability exposure which [he] may incur." (American's App. 39). Finally, the letter informed Mahan that American would "continue to protect [his] interest within the provisions of [his] policy." (American's App. 39). At some point, Mahan retained counsel because "there was an issue of possible criminal liability with respect to Mahan's operation of" his vehicle on October 25, 2003. (Tr. 320).

On March 1, 2004, American filed a complaint in interpleader, naming Mahan, Brian Hurley, Donna Hurley, Katrina Weiss,

Kyle Weiss, Brooklyn Weiss, Michael Elwood and Tracy McDonald as interpleader defendants. American sought

> to pay the sum of One Hundred Thousand Dollars ($100,000) into the Court for the benefit of the Defendants Katrina Weiss, Kyle Weiss, Brooklyn Weiss, Michael Elwood, Tracy McDonald, Brian Hurley and Donna Hurley, the proceeds of the policy issued by [American] to [Mahan], such fund to be distributed upon an appropriate Order from the Court determining who may be entitled to such funds and the amount to which each of the Defendants Katrina Weiss, Kyle Weiss, Brooklyn Weiss, Michael Elwood, Tracy McDonald, Brian Hurley and Donna Hurley may be entitled.

(App. 17). The complaint also sought relief from "any further obligation under the policy of insurance issued to [Mahan] and desire[d] to be relieved of the obligation and expense of defending [Mahan] from the claims made by the other Defendants," Katrina Weiss, Kyle Weiss, Brooklyn Weiss, Michael Elwood, Tracy McDonald, Brian Hurley and Donna Hurley. (App. 17). The complaint requested "[t]hat the court order and decree that [American] is relieved of any duty or obligation to [Mahan] against any claims, actions, proceedings or cause of actions by any of the other Defendants herein against [Mahan] arising out of the accident. . . ." (App. 18).

On April 8, 2004, Mahan filed an answer, asserting that American had "an affirmative duty to afford defense to Mahan in this cause of action, and to afford such defense at every stage of the proceedings." (App. 54). Mahan further asserted estoppel as an affirmative defense.

In August and November of 2004, counsel for American sent letters to Mahan's counsel, proposing that "the declaratory judgment action as to duty to defend" be dismissed, without prejudice, "as it could be revisited if any of the co-defendants filed suit for damages against [Mahan]." (American's App. 4). Mahan, however, refused such a stipulation.

On October 28, 2004, the trial court held a hearing on damages, at which the "[p]arties agree[d] to the distribution of the interpleaded amount with $35,000 to be awarded to Tracy McDonald, Bruce Hurley and Donna Hurley, and $65,000 to be divided amount [sic] Katrina Weiss, Brooklyn Weiss, Kyle Weiss and Michael Elwood." (App. 5). Mahan, however, did not appear at the hearing, and "[t]he issue of the duty to defend [Mahan] remain[ed] pending." (App. 5). Mahan filed an objection to the consent decree and distribution of funds on November 18, 2004.

On November 19, 2004, Mahan filed an amended answer, asserting the following affirmative defenses:

1. Payment. That by tendering the amount stated in the complaint in interpleader, Mahan has paid all obligations he owes to all parties in this cause.

2. Estoppel. That by [American]'s failure to secure Mahan's consent to the action in interpleader in this cause of action, or by [American]'s failure to advise Mahan of the potential for excess liability, [American] is estopped from denying Mahan defense throughout these proceedings.

3. Estoppel. [American] breached a duty to defend Mahan before filing [American]'s complaint in interpleader in this cause, and as a result of [American]'s breach of duty [American] is estopped from denying continuing defense to Mahan in this cause, and is further obligated to indemnify Mahan in the event of excess liability owed to third party claimants.

(App. 57).

Also on November 19, 2004, Mahan filed a counterclaim against American, asserting

that American's automobile policy imposed "a duty to defend Mahan against third parties claiming payment pursuant to the policy," and that American

breached its duty to defend Mahan by failing to attempt to secure a release of further claims by third parties against Mahan within the limits of the policy of insurance between [American] and Mahan; and, by failing to defend Mahan prior to interpleading policy limits into the court; and, by interpleading policy limits into the court before suit having been filed by third party claimants; and, by failing to advise Mahan prior to interpleader of the potential of excess liability so that Mahan could take steps to defend himself from excess liability to third party claimant.

(App. 64). Mahan further asserted that American "had a duty to deal in good faith with Mahan in affording Mahan defense against third party claimants" and "breached the duty to act in good faith in dealing with their insured, resulting in Mahan's damage." (App. 65). Mahan requested a "declaratory judgment that [American]'s duty to defend Mahan continues throughout these proceedings or subsequent proceedings that may be filed by third party claimants." (App. 65). Mahan also sought punitive damages and attorney's fees.

On December 29, 2004, the trial court entered a consent decree for distribution of interpleaded funds and for entry of permanent injunction. The decree provided for monetary distributions to Brian Hurley, Donna Hurley, Katrina Weiss, Kyle Weiss, Brooklyn Weiss, Michael Elwood and Tracy McDonald in full and complete satisfaction of their claims against American. The trial court ordered, in pertinent part:

8. [American] is hereby RELEASED AND DISCHARGED from further liability on account of its policy of insurance issued to [Mahan] . . . and [Mahan] is hereby RELEASED AND DISCHARGED from all liability arising out of the accident which occurred on October 25, 2003 in Delaware County, Indiana.

9. Each defendant is perpetually enjoined from commencing or further prosecuting any action in state or federal court against [American] and [Mahan] with regard to any claim, loss, injury, death or damage arising out of the two vehicle accident which occurred on October 25, 2003. . . .

10. The defendants['] agreement that any existing or future medical lien or liens of any type will be paid by such defendants and such defendants' agreement to save harmless [American] and [Mahan] from any claim brought as a result of any treatment or damages arising out of the two vehicle accident . . . including but not limited to attorney fees incurred to defend such claims and all other costs, is hereby approved.

\*　　\*　　\*

12. The defendants and each of them shall accept the payment ordered herein as the limit of their claims against [American] and [Mahan] and any claims in excess of the amounts ordered paid herein as to [American] and [Mahan] shall be foreclosed.

\*　　\*　　\*

15. The counterclaim of [Mahan] against [American] is not resolved and remains pending.

(App. 96–98).

On May 4, 2005, Mahan filed a motion for partial summary judgment, asserting he was entitled to judgment as a matter of law on the duty to indemnify, duty to defend and bad faith claims. On June 2, 2005, American filed its cross-motion for

summary judgment and opposition to Mahan's motion for partial summary judgment.

The trial court held a hearing on the motions for summary judgment on July 26, 2005. On October 21, 2005, the trial court entered findings of fact and conclusions of law. The trial court found, in part, as follows:

10. [American] investigated the claims of Brian Hurley and his six passengers and received information that the total medical bills for all the claimants was in the amount of $47,647.47; that some of the injuries were serious. . . .

11. On December 1, 2003, [American] . . . advised [Mahan] that the claims of Brian Hurley and his six passengers might exceed his policy limits and that he had the right to retain personal counsel to advise him with regard to any excess liability exposure.

12. Based on the lack of comparative fault of driver Brian Hurley, the number of people injured, the types of injuries and the total of the claimant's [sic] medical bills, [American] decided to interplead the policy proceeds afforded by [Mahan]'s automobile policy in the amount of $100,000.00.

\* \* \*

16. On November 30, 2004, [American] paid its $100,000.00 policy proceeds to the Clerk of this Court.

17. A consent decree was entered on December 29, 2004 providing for the distribution of the interpleaded funds and precluding the filing of any claims against [American] and [Mahan] by Driver Brian Hurley and his six passengers.

18. No lawsuits arising out of the October 25, 2003 accident have been filed against [Mahan].

(App. 277–279). The trial court then concluded as follows:

### DUTY OF INDEMNIFICATION

21. [American] never denied that it had a duty to indemnify [Mahan] up to the per occurrence policy limits of $100,000.00 and paid the policy limits to the Clerk of this Court.

22. The issue of the duty of indemnification became moot upon the tender of the $100,000.00 per occurrence policy limits of the [American] policy to the Clerk.

### DUTY TO DEFEND

23. The issue of whether [American] owed a duty to defend its insured [Mahan] against claims arising out of the October 25, 2003 accident became moot upon the entry of the consent decree precluding any claims against [Mahan] by those injured in the accident.

24. [American] did not owe a duty to defend [Mahan] in the declaratory judgment action requesting a determination of the enforceability of the [American] policy's duty to defend clause.

### DUTY OF GOOD FAITH

25. The law of Indiana recognizes an implied duty of good faith and fair dealing owed by an insurer to its insured.

26. Indiana also recognizes, in a long-standing rule, that an insurer has the right to disagree with an insured's claim as long as the disagreement in based upon good faith.

27. The issue of the validity of [American]'s duty to defend clause . . . presents a case of first impression in Indiana.

28. There is authority in other jurisdictions determining that such clauses are unambiguous and not against public policy.

29. [American]'s determination to pay its policy proceeds into court rather than attempt separate negotiations with sev-

en claimants based upon its investigation of the October 25, 2003 accident did not breach the duty of good faith owed to its insured [Mahan] and was reasonable.

30. [Mahan] suffered no harm from the interpleader undertaken by [American] as the interpleader resulted in a consent decree foreclosing any litigation by the claimants ... against him.

31. [American] did not breach its duty of good faith to its insured by seeking a declaration with regard to its duty to defend policy provision.

32. Under Indiana law, to recover punitive damages against an insurer, the insured must present clear and convincing evidence that the insurer acted with malice, fraud, gross negligence or oppressiveness which was not the result of mistake of law, honest error or judgment, overzealousness, mere negligence or other human failings.

33. There is no evidence that [American] acted with malice, fraud, gross negligence or oppressiveness when it made the determination to interplead the per occurrence policy proceeds into court.

34. [American] is entitled to judgment as a matter of law on [Mahan]'s claim of breach of the duty of good faith and claim for punitive damages.

### ATTORNEY FEES

35. In Indiana, each party to litigation pays his own counsel fees unless there is a statute or some agreement authorizing such fees.

36. There is no statute or agreement authorizing the payment of [Mahan]'s attorney fees applicable in this case.

37. Although Indiana courts have recognized three exceptions to the general rule that each party pays his own counsel fees, i.e., the "bad faith exception, the common fund exception and the private attorney general exception,["] none of those exceptions applies to this case.

38. [American] is entitled to judgment as a matter of law on [Mahan]'s claim for attorney fees.

(App. 279–82) (internal citations omitted). The trial court granted American's cross-motion for summary judgment and denied Mahan's motion for partial summary judgment.

### DECISION

 Mahan asserts the trial court erred as a matter of law in denying his motion for partial summary judgment and granting American's cross-motion for summary judgment on the claims of breach of duty to defend and bad faith. When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury,* 671 N.E.2d 113, 116 (Ind. 1996). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 169 (Ind.1996). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App. 1991). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996). However, once the movant has carried his initial burden of going forward under Trial Rule

56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 138 (Ind. Ct.App.1993), *trans. denied.* If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id.*

"Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment." *Doe v. Donahue*, 829 N.E.2d 99, 106 (Ind. Ct.App.2005), *trans. denied, cert. denied,* — U.S. —, 126 S.Ct. 2320, 164 L.Ed.2d 839 (2006). "In addition, '[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Indiana Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App. 2000)).

### 1. *Duty to Defend*

Mahan asserts that American had a duty to defend him under the terms of the policy and that it was not relieved of this duty when it filed its interpleader. American, however, asserts that the duty to defend its insured "never arose because no lawsuits were ever filed against him." American's Br. 7.

The interpretation of an insurance policy is primarily a question of law, and therefore, is a question particularly suited for summary judgment. *Lake States Ins. Co. v. Tech Tools, Inc.*, 743 N.E.2d 314, 318 (Ind.Ct.App.2001). "Where there is an ambiguity, policies are to be construed strictly against the insurer." *Id.* "An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Allstate Ins. Co. v. Bradtmueller*, 715 N.E.2d 993, 997 (Ind.Ct.App.1999), *trans. denied.* An ambiguity does not exist, however, merely because the parties favor a different interpretation. *Id.*

Where terms are unambiguous, they should be given their plain and ordinary meaning. *Farmers Ins. Exchange v. Smith*, 757 N.E.2d 145, 149 (Ind. Ct.App.2001), *trans. denied.* A court should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.*

American's policy promised that "[American] will defend any suit or settle any claim for damages payable under this policy as we think proper." (App. 23). While American's policy does not define "suit," its common meaning is "an action or process in a court for the recovery of a right or claim." Merriam–Webster Dictionary at *http://www.m-w.com/dictionary/suit* (Dec. 12, 2006).

Here, none of the injured parties filed suit against Mahan. Thus, American's policy did not require it to provide Mahan with a defense. Furthermore, an insurance company's duty to defend is "determined from the allegations of the complaint and from the facts known or ascertainable by the insurer after an investigation has been made." *Ind. Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1382 (Ind.Ct.App.1997), *trans. denied.* Again, in this case, the injured parties did not file a complaint. Therefore, there could have been neither a determination of nor a breach of a duty to defend. Accordingly, we find that the trial court properly granted summary

judgment in favor of American and against Mahan on the duty to defend issue.

### 2. Bad Faith

 Mahan asserts that American's conduct constituted bad faith because "at no point did [American] attempt to obtain a release as to Mahan." Mahan's Br. 21. Mahan argues that "had Mahan's counsel not objected to the original Consent Decree, the policy proceeds would have been paid to the claimants without Mahan being released. Thus, removing any bargaining leverage possessed by Mahan in his attempt to obtain a release from the claimants." Mahan's Br. 22.

 With respect to the discharge of an insurer's contractual obligation, the obligation of good faith and fair dealing requires the insurer to refrain from 1) making an unfounded refusal to pay policy proceeds; 2) causing an unfounded delay in making payment; 3) deceiving the insured; and 4) exercising any unfair advantage to pressure an insured into a settlement of a claim. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind.1993). "Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present." *Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind.Ct.App.1998), *trans. denied.* Thus, "[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Id.*

In this case, there is no evidence that American 1) made an unfounded refusal to pay policy proceeds; 2) caused an unfounded delay in making payment; 3) deceived Mahan; or 4) exercised an unfair advantage to pressure Mahan into a settlement of a claim. Rather, American filed an interpleader action, which "typically involves a neutral stakeholder, usually an insurance company or a bank, seeking apportionment of a common fund between two or more parties claiming an interest in it." *Euler v. Seymour Nat'l Bank*, 519 N.E.2d 1242, 1245 n. 2 (Ind.Ct.App.1988). We cannot say that, given the evidence, American acted with a dishonest purpose, moral obliquity, furtive design, or ill will when it filed its interpleader. To the contrary, American had a rational basis for filing the interpleader: after investigating the facts and circumstances surrounding the accident, American determined that Mahan was at fault for the accident, and American most likely would be subject to multiple claims, the total of which would meet, if not exceed, the limits of the policy. Furthermore, American informed Mahan of the results of the investigation, that the claims of the multiple claimants might exceed the limits of his policy and that he had the right to retain personal counsel to advise him regarding any excess liability.

Based on the designated evidence, we hold that American did not breach its duty of good faith. Thus, the trial court properly granted American's cross-motion for summary judgment and denied Mahan's motion for partial summary judgment on Mahan's bad faith claim.

Affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.

### ORDER

On January 9, 2007, this Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion to Publish Opinion. The Appellee states that this Court's opinion establishes for the first time that an insurer's promise to "defend any suit" does not give rise to a duty to defend until the insured is sued.

Further, the opinion discusses the propriety of interpleader by an insurer where the insurer has a rational basis for filing the interpleader after investigation and after notifying the insured of the following: (1) the results of the investigation, (2) the possibility of an excess judgment and (3) the insured's right to retain personal counsel to advise him regarding any excess liability. For the foregoing reasons, the Appellee requests that this Court's opinion be ordered published.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS: 1. The Appellee's Motion to Publish Opinion is GRANTED and this Court's opinion handed down January 9, 2007 is now ORDERED PUBLISHED.

All Panel Judges Concur.