

FILED

Aug 06 2020, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR
APPELLANTS/CROSS-APPELLEES

William B. Weiler
John A. Masters
Langhenry Gillen Lundquist &
Johnson, LLC
Munster, Indiana

ATTORNEYS FOR
APPELLEE/CROSS-APPELLANT

Christopher G. Stevenson
Wilson Kehoe Winningham LLC
Indianapolis, Indiana

Kyle E. Cray
Kisti Good Risse
Bennett Boehning & Clary LLP
Lafayette, Indiana

ATTORNEYS FOR AMICUS
CURIAE INDIANA TRIAL
LAWYERS ASSOCIATION

Brian A. Karle
Sarah M. Wyatt
Ball Eggleston PC
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eric McGowen and Vision
Logistics, Inc.,

*Appellants/Cross-Appellees,*

v.

Bradley Montes,

*Appellee/Cross-Appellant.*

_____

August 6, 2020

Court of Appeals Case No.
19A-CT-1707

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1708-CT-138

**Friedlander, Senior Judge.**

[1] Eric McGowen and Bradley Montes were injured in a vehicle accident after McGowen stopped at the scene of a prior vehicle accident and Montes collided with his vehicle. McGowen sued Montes, and Montes sued McGowen and McGowen's employer, Vision Logistics, Inc.

[2] In this interlocutory appeal, the parties cross-appeal the trial court's rulings on their cross-motions for summary judgment, in which the court determined that a dispute of material fact remains to be decided at trial. We affirm in part but also reverse in part and remand because we conclude there are no disputes of material fact and McGowen and Vision are entitled to judgment as a matter of law.

[3] On the morning of November 4, 2016, before the sun had risen, there was heavy fog in rural Tippecanoe County. McGowen was driving a semi-tractor (without a trailer) owned by his employer, Vision, on a two-lane county road. Traffic was sparse, but McGowen drove at thirty-five to forty miles per hour, well below the speed limit of fifty miles per hour, due to poor visibility. As he drove east, McGowen saw a truck in a ditch on the side of the road. The truck was upright and its headlights were on, pointing at McGowen's semi as he approached. The truck's roof, windshield, and hood were heavily damaged. McGowen also saw another vehicle stopped in the road near the truck, but that vehicle drove off as McGowen approached. McGowen speculated that there had been a two-car accident, and the other vehicle was leaving the scene.

[4] McGowen saw a man, later identified as Ryan Patton, "kind of wandering around" the truck. Appellee/Cross-Appellant's App. Vol. II, p. 40. McGowen thought Patton "was drunk at first" or possibly injured. *Id*.

[5] McGowen stopped his semi in the road. He kept his foot on the brake, rather than shifting the semi's transmission to park. The semi's rear brake lights activated automatically when the driver pressed on the brake pedal. McGowen checked his side mirrors as he slowed to a halt, but he did not see any sign of vehicles approaching from behind.

[6] McGowen rolled down the passenger window and asked Patton, "Are you okay?" *Id.* Patton climbed up to the semi's passenger-side window and responded, "Yeah." *Id.* Next, McGowen asked Patton if he wanted McGowen to call 911. Patton responded, "Yeah, if you don't mind." *Id.*

[7] Rebecca Higgins was traveling westbound on the same road and she saw the headlights of McGowen's semi, stopped in the road. She pulled past the semi, parked on the side of the road opposite the semi, and activated her hazard lights. She saw Patton's truck after she had passed the semi. Higgins also saw the semi's brake lights.

[8] Meanwhile, Montes was also driving east on the same county road. Higgins saw Montes' car traveling in her direction. She activated her vehicle's high beams to warn Montes, but he did not slow down. Higgins also rolled down her window, waved her arms, and yelled, but Montes still did not slow down. He instead collided with the rear of McGowen's semi, without braking,

immediately after Patton had asked McGowen to call 911. McGowen estimated no more than fifteen to thirty seconds had elapsed from the time he stopped until the time Montes struck the semi. Another vehicle that was also traveling east on the road, behind Montes, saw McGowen's semi and stopped before hitting Montes' car.

[9] Both McGowen and Montes suffered injuries from the collision. Montes later recalled seeing the rear of McGowen's semi prior to the collision, but he was unsure of the distance at which he first saw it.

[10] This case began on August 24, 2017, when McGowen sued Montes, claiming negligence.[1] Montes filed an answer, counter-sued McGowen for negligence, and sued Vision as a third-party defendant, alleging McGowen had been working for Vision at the time of the collision.

[11] In January 2019, McGowen and Vision filed a motion for summary judgment, asking the court to determine that they were immune from Montes' negligence claims under Indiana Code section 34-30-12-1 (2008), also known as the Good Samaritan Law ("GSL"). Montes responded to the motion and filed a cross-motion for partial summary judgment, asserting the GSL did not apply to McGowen's conduct.

---

[1] McGowen also sued Montes' insurer, but the insurer prevailed on a motion for summary judgment and ceased to be a party to the case.

[12] After a hearing, the trial court issued an order determining: (1) there is no dispute of material fact that McGowen was rendering emergency care, for purposes of the GSL, when he stopped and offered to call 911; but (2) there is a dispute of material fact as to whether McGowen's act in stopping on the road amounted to gross negligence or willful or wanton misconduct, for purposes of the GSL. The court granted in part and denied in part McGowen and Vision's motion for summary judgment, and denied Montes' cross-motion for partial summary judgment.

[13] Montes, McGowen, and Vision asked the trial court to certify its order for interlocutory review. The court granted the motion. Next, both sides separately asked the Court to accept this appeal. The Court granted the motions, and this appeal followed.

# 1. Standard of Review

[14] Summary judgment orders are reviewed de novo, applying the same standard of review as the trial court. *AM General LLC v. Armour*, 46 N.E.3d 436 (Ind. 2015). Summary judgment is appropriate if the evidence designated by the parties demonstrates "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C).

[15] The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Hughley v. State*, 15 N.E.3d 1000 (Ind. 2014). If the movant bears its burden, then the nonmovant must present contrary evidence showing an issue for the trier of fact. *Id.* All evidence must be construed in

favor of the nonmovant. *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669 (Ind. Ct. App. 2007), *trans. denied*.

[16] Cross-motions for summary judgment do not alter our standard of review. *Alexander v. Linkmayer Dev, II, LLC*, 119 N.E.3d 603 (Ind. Ct. App. 2019). Instead, we consider each motion separately to determine whether the movant is entitled to judgment as a matter of law. *Mahan*, 862 N.E.2d 669.

[17] In addition, this case requires us to review the trial court's application of the GSL. Interpretation of a statute is a question of law reserved for the courts and, as is the case for a summary judgment order, is reviewed under a de novo standard. *Ind. State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.*, 865 N.E.2d 660 (Ind. Ct. App. 2007).

## 2. The Good Samaritan Law

[18] The GSL provides:

> (a) This section does not apply to services rendered by a health care provider (as defined in IC 34-18-2-14 or IC 27-12-2-14 before its repeal) to a patient in a health care facility (as defined in IC 27-8-10-1).

> (b) Except as provided in subsection (c), a person who comes upon the scene of an emergency or accident, complies with IC 9-26-1-1.5, or is summoned to the scene of an emergency or accident and, in good faith, gratuitously renders emergency care at the scene of the emergency or accident is immune from civil liability for any personal injury that results from:

(1) any act or omission by the person in rendering the emergency care; or

(2) any act or failure to act to provide or arrange for further medical treatment or care for the injured person;

except for acts or omissions amounting to gross negligence or willful or wanton misconduct.

(c) This subsection applies to a person to whom IC 16-31-6.5 applies. A person who gratuitously renders emergency care involving the use of an automatic external defibrillator is immune from liability for any act or omission not amounting to gross negligence or willful or wanton misconduct if the person fulfills the requirements set forth in IC 16-31-6.5.

(d) This subsection applies to an individual, business, or organization to which IC 16-31-6.5 applies. An individual, business, or organization that allows a person who is an expected user to use an automatic external defibrillator of the individual, business, or organization to in good faith gratuitously render emergency care is immune from civil liability for any damages resulting from an act or omission not amounting to gross negligence or willful or wanton misconduct by the user or for acquiring or providing the automatic external defibrillator to the user for the purpose of rendering the emergency care if the individual, business, or organization and the user fulfill the requirements set forth in IC 16-31-6.5.

(e) A licensed physician who gives medical direction in the use of a defibrillator or a national or state approved defibrillator instructor of a person who gratuitously renders emergency care involving the use of an automatic external defibrillator is immune from civil liability for any act or omission of the licensed

physician or instructor if the act or omission of the licensed physician or instructor:

(1) involves the training for or use of an automatic external defibrillator; and

(2) does not amount to gross negligence or willful or wanton misconduct.

Ind. Code § 34-30-12-1.

[19] The GSL has rarely been addressed by Indiana's appellate courts. The statute's grant of immunity from civil liability under certain circumstances limits a claimant's right to bring suit, "in derogation of the common law." *Beckerman v. Gordon*, 614 N.E.2d 610, 612 (Ind. Ct. App. 1993), *reh'g denied*, 618 N.E.2d 56 (1993), *trans. denied*. We strictly construe such statutes against limitations on the right to sue. *Id.*

[20] When applying a statute to a case, "our first task is to give its words their clear and plain meaning, while considering the structure of the statute as a whole." *City of Lawrence Utils. Serv. Bd. v. Curry*, 68 N.E.3d 581, 585 (Ind. 2017). If a statute contains clear and unambiguous language, it is not subject to judicial interpretation. *Yates v. Kemp*, 979 N.E.2d 678 (Ind. 2012).

## 3. Cross-Appeal: Emergency Care

[21] We first address Montes' cross-appeal claim because, if it is meritorious, it would be dispositive of the appeal. He argues the trial court should have granted his motion for partial summary judgment because McGowen was not

rendering emergency care for purposes of the GSL when he stopped at the accident scene to ask if Patton was okay and whether he should call 911. Montes argues that the GSL applies only to "persons actively participating in rendering care or assistance," Appellee/Cross-Appellant's Br. p. 15, and not to people in McGowen's situation.[2] He further argues the facts demonstrate there was no emergency at the time McGowen stopped his semi.

[22] The General Assembly has defined the phrase "gratuitously renders emergency care," as set forth in the GSL, in relevant part:

> [t]he giving of emergency care (including the use of an automatic external defibrillator):
>
> (1) that was volunteered without legal obligation on the part of the person rendering the emergency care; and
>
> (2) for which the person rendering the emergency care does not expect remuneration.

Ind. Code § 34-6-2-51 (1999). This statute focuses on the element of gratuitousness and does not address what conduct, other than the use of a defibrillator, meets the definition of emergency care.

[23] Similarly, Indiana's prior cases applying the GSL have not sought to define "emergency care." In *McKinney v. Public Service Company of Indiana, Inc.*, 597

---

[2] In addition, amicus curiae Indiana Trial Lawyers Association claims "emergency care" means "administration of first aid, medical care, or physical assistance." Amicus Curiae Br. p. 8.

N.E.2d 1001 (Ind. Ct. App. 1992), *trans. denied*, a panel of this Court was asked to determine whether a vehicle that was disabled due to a flat tire, where the driver was uninjured, was an "accident" for purposes of the Samaritan Law. The panel determined that those circumstances did not amount to an accident, and the person who stopped to change the flat tire was not immune from civil suit under the GSL. In *Beckerman*, 614 N.E.2d 610, this Court was similarly asked to determine whether the circumstances of that case amounted to an "accident" for purposes of the GSL. A doctor had been called to a house to treat an ill person, who subsequently died from a heart attack. This Court concluded the victim's medical condition was not a "sudden calamitous event," and the GSL did not provide immunity from suit. *Id.* at 613.

[24] The parties cite several cases from other jurisdictions in support of their claims. Those cases are not particularly helpful here because other states' Good Samaritan laws are drafted differently from Indiana's, and the courts applying those statutes have reached differing results. *See, e.g.*, *McDowell v. Gillie*, 626 N.W.2d 666, 675 (N.D. Sup. Ct. 2001) (stopping at an accident to ask if assistance is needed can constitute rendering "aid" for North Dakota's GSL); *Howell v. City Towing Assoc., Inc.*, 717 S.W.2d 729, 731 (Tex. Ct. App. 1986) (tow truck driver calling his dispatcher after passenger suffered medical emergency did not amount to "emergency care" as defined by Texas' GSL), *writ refused*.

[25] In the absence of a statutory definition or prior caselaw, we define "emergency care" in accordance with our principles of statutory application. Subsection

(b)(2) of the GSL distinguishes between medical treatment and other forms of emergency assistance, providing immunity for persons who "provide or arrange for further medical treatment *or* care." Ind. Code § 34-30-12-1(b)(2) (emphasis added). Based on the plain language of the statute, "emergency care" thus encompasses actions other than direct medical treatment. In addition, the Samaritan Law immunizes an "act or failure to act to provide or arrange for further medical treatment or care for the injured person." *Id.* In the current case, it is undisputed that McGowen stopped his semi to ask Patton if he was okay and if McGowen should contact 911. McGowen was thus seeking to arrange medical treatment, as mentioned in the statute.

[26]     Montes and amicus curiae argue that, reading the GSL in its entirety, the statute encompasses only medical care or first aid. We disagree. Subsections (c), (d), and (e) of the GSL address the use of a defibrillator to provide medical assistance. The General Assembly clearly knew how to specify medical care, including specific medical treatments, in the GSL. If the General Assembly had intended to specify that "emergency care" meant only medical treatment or first aid, they could have done so. "We cannot add new words to a statute but are bound to apply statutes as the legislature has written them." *Matter of Supervised Estate of Kent*, 99 N.E.3d 634, 639 (Ind. 2018). We conclude from the unambiguous language of the GSL that stopping and asking if a person who has been involved in an accident needs help is "emergency care."

[27]     Next, Montes argues the scene of the vehicle collision did not qualify as an "objective emergency." Appellee/Cross-Appellant's Br. p. 13. The *Beckerman*

court defined an "accident" as a "sudden calamitous event." *Beckerman*, 614 N.E.2d at 613. In this case, McGowen arrived on the scene of an automobile accident, possibly a two-car collision. Further, Patton was wandering around the truck, giving McGowen the impression that he was injured or drunk. This is ample, undisputed evidence of a sudden event, with a potentially injured person, that qualified as an emergency for purposes of the GSL. The trial court did not err in denying Montes' motion for partial summary judgment.

## 4. Gross Negligence and Willful and Wanton Misconduct

[28] The GSL provides that a person is not shielded from civil liability if the person's acts or omissions while providing emergency care amounted to "gross negligence or willful or wanton misconduct." Ind. Code § 34-30-12-1. The trial court determined there was a dispute of material fact as to whether McGowen's conduct was grossly negligent or willful or wanton. McGowen and Vision argue that the undisputed facts establish that his acts did not meet either standard, and they conclude the trial court should have granted their motion for summary judgment in its entirety.

[29] The General Assembly has frequently used the phrases "gross negligence" and "willful or wanton misconduct" in statutes granting immunity from civil damages. *See, e.g.*, Ind. Code § 21-44.5-2-6 (2019) (administration of auto-injectable epinephrine); Ind. Code § 31-33-6-2 (2018) (reporting child abuse or neglect); Ind. Code § 10-17-13.5-7 (2018) (physicians' administration of hyperbaric oxygen treatments to veterans). We have not found a statutory

definition of those terms for purposes of the GSL, and the parties have not directed us to any.

[30] The Indiana Supreme Court has defined gross negligence as "'[a] conscious, voluntary act or omission in reckless disregard of . . . the consequences to another party.'" *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) (quoting BLACK'S LAW DICTIONARY 1057 (7th ed. 1999)). A finding of gross negligence is predicated on a showing of negligence, as it is the intentional failure to perform a duty in reckless disregard of the consequences. *York v. Fredrick*, 947 N.E.2d 969 (Ind. Ct. App. 2011), *trans. denied*.

[31] In *Miller v. Indiana Department of Workforce Development*, 878 N.E.2d 346 (Ind. Ct. App. 2007), Miller was driving his employer's truck when he stopped at a stop sign. Upon driving into the intersection, he collided with a vehicle approaching from his right side. Miller's employer terminated him after the collision, citing a provision of a labor agreement that permitted instant termination for "gross negligence." *Id.* at 350.

[32] Miller sought unemployment benefits, and he appealed the denial of his request. A panel of this Court applied the definition of gross negligence set forth above, noting "the question of whether an act or omission constitutes gross negligence is generally a question of fact, [but] the question may become one of law if 'the facts are undisputed and only a single inference can be drawn from those facts.'" *Id.* at 356 (quoting *Sharp*, 790 N.E.2d at 466). The Court concluded that Miller's failure to use due care when entering the intersection

after stopping at the stop sign was "negligent, but not grossly negligent." *Id.* at 357.

[33] In this case, the undisputed facts establish that McGowen was driving at only thirty-five to forty miles per hour when he stopped his semi in the road at the scene of an accident. McGowen did not put his semi in park but merely pressed on the brake, activating his rear brake lights. He was unaware of any vehicles behind him. McGowen asked Patton if he was okay and whether he should call 911, immediately before Montes collided with the rear of the semi. McGowen stated, without contradiction, that only fifteen to thirty seconds elapsed between him stopping his semi and being rear-ended by Montes. These circumstances resemble at worst the mere negligence at issue in *Miller*, rather than the reckless disregard for others that characterizes gross negligence.

[34] Montes claims there are several material disputes of fact that justify the trial court's partial denial of McGowen and Vision's motion for summary judgment on the issue of gross negligence. We disagree. He points to evidence that McGowen could have pulled off the road, contradicting Montes' statement during a deposition that there was no space for his semi along the side of the road. This fact is immaterial due to the short duration of the stop prior to the collision and McGowen's choice to not put the semi in park, allowing him to move on quickly if needed.

[35] There is also a dispute as to whether McGowen activated his vehicle's hazard lights after stopping, in the brief interval before Montes collided with him. This

factual dispute is also immaterial because it is undisputed that McGowen's brake lights activated when he stopped, and: (1) the brake lights override the hazard lights, and (2) the brake lights are as bright as the hazard lights.

[36] Finally, Montes claims McGowen violated numerous traffic regulations and commercial driver standards when he stopped in the road. Even if McGowen's acts were contrary to statutes, "violation of a statutory duty creates a presumption of negligence that may be rebutted." *Sandberg Trucking, Inc. v. Johnson*, 76 N.E.3d 178, 188-89 (Ind. Ct. App. 2017). A presumption of negligence is dissimilar to a presumption of gross negligence. We conclude that there is no dispute of material fact as to whether McGowen was grossly negligent.

[37] Turning to willful or wanton conduct, such conduct consists of two elements: "(1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequence of his conduct." *Witham v. Norfolk and Western Ry. Co.*, 561 N.E.2d 484, 486 (Ind. 1990). "The distinction between constructive willfulness and mere negligence depends on the actor's state of mind." *McKeown v. Calusa*, 172 Ind. App. 1, 6-7, 359 N.E.2d 550, 554 (1977).

[38] In *Frybarger v. Coffelt*, 180 Ind. App. 160, 387 N.E.2d 104 (1979), a passenger in Coffelt's car died when Coffelt chose to race another driver on a two-lane highway at night and collided with a third car attempting to turn left across the

highway. On appeal, the passenger's estate argued that the trial court erred in determining Coffelt's conduct did not meet the definition of willful or wanton misconduct. A panel of this Court concluded that, although Coffelt was racing at night at a high rate of speed, a dip in the road made it impossible for him to see the car in time to avoid striking it, and there was no evidence of any other reckless behavior by Coffelt. The Court affirmed the trial court's determination that Coffelt had not behaved willfully and wantonly.

[39] In the current case, the standard of review is different, but McGowen's conduct is far less reckless than Coffelt's. On a dark, foggy morning, McGowen drove on a two-lane county road at thirty-five to forty miles per hour due to poor visibility. He came to a stop when he saw Patton and the wrecked truck along the side of the road, pressing on the brake rather than shifting into park. McGowen checked his side mirrors as he slowed to a halt, but he did not see any sign of approaching vehicles. He barely had time to ask Patton if he was okay and whether he should call 911 when Montes collided with the back of the semi. During McGowen's deposition, when asked if he was concerned that stopping on the road may have been hazardous, he stated, "I was more concerned about [Patton]. I thought it was a two-car accident." Appellants'/Cross-Appellees' App. Vol. II, p. 104. There is no evidence that McGowen was indifferent to the results of his conduct. Rather, the undisputed facts demonstrate McGowen was aware of dangerous road conditions and attempted to drive carefully while rendering aid to Patton. As a matter of law, McGowen's conduct did not meet the standard of willful or wanton

misconduct. The trial court erred in denying in part McGowen and Vision's motion for summary judgment, because they are entitled to the protection of the Good Samaritan Law.

[40] For the reasons stated above, we affirm the judgment of the trial court in part, reverse in part, and remand with instructions to grant McGowen and Vision's motion for summary judgment.

[41] Judgment affirmed in part and reversed in part, and remanded with instructions.

May, J., and Tavitas, J., concur.