**WILCOX MANUFACTURING GROUP, INC., d/b/a Superior Automation Company and Howard Wilcox, Jr., Appellants–Defendants,**

v.

**MARKETING SERVICES OF INDIANA, INC., Appellee–Plaintiff.**

No. 49A02–0503–CV–216.

Court of Appeals of Indiana.

Aug. 10, 2005.

---

Sherwood P. Hill, Clinton E. Blanck, Maurer Rifkin & Hill, P.C., Carmel, for Appellants.

Bradley J. Schulz, Goodin Abernathy & Miller, LLP, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellants-defendants Wilcox Manufacturing Group, Inc., d/b/a Superior Automation Company (Superior) and Howard Wilcox, Jr. (Wilcox) appeal the trial court's order granting summary judgment in favor of appellee-plaintiff Marketing Services of Indiana, Inc. (MSI). Specifically, Superior and Wilcox raise two issues, which we consolidate and restate as whether the trial court erred in concluding that Wilcox's mental competency was not an issue of material fact that precluded entry of summary judgment. Finding that the contract was ratified after the incompetency was removed, we affirm the judgment of the trial court.

*FACTS*

Wilcox is the president of Superior. One of his duties as president is to review contracts for the purchase of goods and/or services and leases and execute them on behalf of Superior. Beginning January 20, 1999, Superior entered into a series of "lease agreements" with MSI, calling for periodic rental payments for equipment for an established time period. The only one of the agreements at issue here is the one entered into on December 5, 2000 (Agree-

ment). Although each of the documents are entitled "Lease Agreement," the Agreement at issue was actually a security interest in equipment that belonged to Superior given in exchange for a $50,000 loan from MSI.[1] The total amount of "rent" that Superior was to repay for the loan was $67,213.80 over the course of sixty months.

The Agreement contained a personal guarantee from Wilcox, which guaranteed full and prompt payment when due by acceleration together with interest, costs, expenses, and attorney's fees. Pursuant to the terms of the Agreement, if Superior defaulted in the payment of any rent or in the making of any payment when due, MSI had the right to exercise any of the remedies set forth in the Agreement, including commencing an action against Superior for total rental payments due or repossession of the equipment held as collateral.

Wilcox has been a patient of psychiatrist Dr. Shaun P. Wood since May 21, 1999. Dr. Wood diagnosed Wilcox as suffering from bipolar disorder[2] during the period from June 2000 to January 2001. During that period, Dr. Wood prescribed Eskalith, Klonopin, Prozac, and Adderall to treat Wilcox's bipolar disorder. On June 9, 2000, Wilcox reported to Dr. Wood that he was having problems with concentration, attention, and functioning at work. Dr.

Wood determined that Wilcox was experiencing lithium toxicity, which was prolonged and exacerbated by a change in Wilcox's Adderall prescription. Dr. Wood thereafter reduced Wilcox's lithium dose, and Wilcox's problems associated with lithium toxicity persisted for ten months. As a result of the effects of the lithium toxicity, Wilcox suffered from impaired cognitive function that limited his capacity to appreciate and understand the nature and quality of his actions and judgments.

Superior made its last payment to MSI on October 28, 2003. There was an outstanding balance remaining on all three of the leases, and the Agreement had an outstanding balance of $33,031.37. On March 17, 2004, MSI filed its complaint against Wilcox for default of the Agreement, and on October 13, 2004, the complaint was amended to include Superior as a defendant.

On October 15, 2004, MSI filed its motion for summary judgment, alleging that there was no dispute that Wilcox and Superior were in default. On November 12, 2004, Wilcox and Superior responded, asserting that there was a genuine issue of material fact with regard to Wilcox's mental status on December 5, 2000, the date the Agreement and guarantee were executed. The trial court held a hearing on December 20, 2004,[3] and entered its judg-

1. Superior and Wilcox make much of the fact that this was a security interest as opposed to a lease, asserting that the contract is therefore unconscionable. While we agree that the Agreement is not properly understood as a lease, that in no way leads to the conclusion that "[n]o sensible man not under delusion, duress or in distress would make such an agreement and no honest man would accept it." Appellant's Br. p. 13. To be sure, secured loans are a common way to procure needed funds in the business world.

2. Bipolar disorder—also called manic-depressive disorder—is an illness that causes ex-

treme mood changes that alternate between manic episodes of abnormally high energy and the extreme lows of depression. Bipolar disorder may cause behavior so severe that you may not be able to function at work, in family or social situations, or in relationships with others. *See* http://my.webmd.com/hw/bipolar_disorder/ty1019.asp (last visited July 19, 2005).

3. While both parties agree that this is accurate, there is no entry in the Chronological Case Summary noting the occurrence of this hearing, and there is no transcript of the

ment in favor of MSI on December 22, 2004. The trial court found that Wilcox's competency was not a material fact and that there was an "absence of genuine issues of fact as to the determinative issue, that is, whether the Defendants failed to make lease payments for equipment received." Appellant's App. p. 7. On January 20, 2005, Wilcox and Superior filed a motion to correct errors, which the trial court denied on February 1, 2005. Wilcox and Superior now appeal.

## DISCUSSION AND DECISION

 Superior and Wilcox assert that the trial court erred in granting summary judgment to MSI. Specifically, they argue that there was a genuine issue of material fact as to Wilcox's competency to enter into the December 5, 2000 Agreement.

On appeal from a grant of summary judgment, our standard of review is the same as that of the trial court. *Harris v. Traini*, 759 N.E.2d 215, 220 (Ind.Ct.App. 2001), *trans. denied.* We stand in the shoes of the trial court and apply a de novo standard of review. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind.2002). Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Embry v. O'Bannon*, 798 N.E.2d 157, 159 (Ind.2003). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 713 (Ind.Ct.App.2004), *trans. denied.* We view the pleadings and designated materials in the light most favorable to the non-moving party. *Freidline*, 774 N.E.2d at 39. A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has

the burden of demonstrating that the grant of summary judgment was erroneous. *Miller v. City of Anderson*, 777 N.E.2d 1100, 1103 (Ind.Ct.App.2002), *trans. denied.* We will affirm upon any theory supported by the designated materials. *Id.*

 The test for determining a person's mental capacity to contract is whether the person was able to understand in a reasonable manner the nature and effect of his act. *Gallagher v. Central Ind. Bank, N.A.*, 448 N.E.2d 304, 307 (Ind.Ct.App. 1983). In order to avoid a contract, the party must not only have been of unsound mind, but also must have had no reasonable understanding of the contract's terms due to his instability. *Id.* The acts or deeds of a person of unsound mind whose unsoundness of mind has not been judicially ascertained and who is not under guardianship are merely voidable and not absolutely void, and are subject to ratification or disaffirmance on removal of the disability. *Monnier v. Central Greyhound Lines*, 125 Ind.App. 672, 676, 129 N.E.2d 800, 803 (1955).

 Contractual defenses, such as capacity, may be waived and the party estopped by behavior inconsistent with their objections. *Scherer v. Scherer*, 405 N.E.2d 40, 47 (Ind.Ct.App.1980). A contract may be upheld despite incapacity where the attacking party acted in accordance with the contract terms and delayed in bringing his subsequent action. *Id.* Ratification is based on the existence of three essential elements: (1) an unauthorized act performed by an individual for and on behalf of another and not on account of the actor himself; (2) knowledge of all material facts by the person to be charged with said unauthorized act; and (3) acceptance of

hearing. *See* Appellant's App. p. 1, 4; Appel-

lant's Br. p. 2; Appellee's Br. p. 2.

the benefits of said unauthorized act by the person to be charged with the same. *T.L.G. v. R.J.*, 683 N.E.2d 633, 635 (Ind.Ct. App.1997) (citing *Beneficial Mortgage Co. of Ind. v. Powers*, 550 N.E.2d 793, 796 (Ind.Ct.App.1990)).

Construing the designated evidence liberally in favor of Superior and Wilcox, we will assume that Wilcox was incapacitated at the time that he signed the Agreement. Thus, the question becomes whether the Agreement was later ratified. We first note that Wilcox and Superior challenge only the second element of ratification. Appellant's Reply Br. p. 2.

MSI's designated evidence reveals that the Agreement called for sixty payments of $1,120.23, which totals $67,213.80. Appellant's App. p. 48. Dale Schenkel, Jr., Senior Vice President of MSI, stated in his affidavit that MSI designated as evidence that MSI received its last payment from Superior on October 28, 2003. Appellant's App. p. 55. It is unclear to which lease agreement this payment refers or if it refers to all three of them. Regardless, Schenkel's affidavit also states that the Agreement has an outstanding balance of $33,031.37. Appellant's App. p. 56. Thus, approximately half of the total payments had been made. So at a minimum, Superior had made payments to MSI under the Agreement for two and one-half years— into the summer of 2003.

Based upon Dr. Wood's affidavit, which was designated by Superior and Wilcox, the latest that Wilcox could have been experiencing the effects of lithium toxicity was October 2001. Appellant's App. p. 70. Therefore, Wilcox regained his capacity fully more than a year and one-half before Superior ceased to make payments under the Agreement. The second element of ratification is fulfilled inasmuch as Superior continued making payments pursuant to the Agreement long after Wilcox, as presi-

dent of Superior, had recovered his ability to understand the nature of the contract upon which his company was making payments. Because the Agreement was ratified and the evidence demonstrated that Superior had breached the Agreement by failing to make timely monthly payments, the trial court did not err in granting summary judgment in favor of MSI.

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.