# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**KEVIN C. TYRA**
**JERRY M. PADGETT**
The Tyra Law Firm, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**GINNY L. PETERSON**
Kightlinger & Gray, LLP
Indianapolis, Indiana

FILED

Apr 08 2013, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

GARY HAMMERSTONE, SUSAN )
HAMMERSTONE, PALMOR PRODUCTS, INC., )
NORTHHAMPTON FARM BUREAU )
COOPERATIVE ASSOCIATION, and )
CANNS-BILCO DISTRIBUTORS, INC., )
)
    Appellants-Defendants/Counterclaimants, )
)
           vs. )    No. 06A04-1211-PL-595
)
INDIANA INSURANCE COMPANY, )
)
    Appellee-Plaintiff/Counterclaim Defendant.[1] )

---

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Matthew C. Kincaid, Judge
Cause No. 06D01-1005-PL-259

---

April 8, 2013

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

---

[1] We note that Mayberstein-Burnell Co., Inc., d/b/a MBAH Insurance ("MBAH") was a third-party defendant below and filed an answer to the third-party complaint filed by Palmor Products, Inc., but there is no further record of their participation in the case below. MBAH was not listed in the summary judgment order issued by the trial court and did not file an appellate brief with this court. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

Gary Hammerstone ("Gary"), Susan Hammerstone (collectively "the Hammerstones"), together with Palmor Products, Inc. ("Palmor"), Northhampton Farm Bureau Cooperative Association ("Northhampton"), and Canns-Bilco Distribution, Inc. ("CBD") (collectively "the Appellants") appeal the trial court's order granting summary judgment in favor of Indiana Insurance Company ("Indiana Insurance") and denying summary judgment in the favor of the Appellants. The Appellants raise the following dispositive issue for our review: whether the trial court erred in granting summary judgment in favor of Indiana Insurance because the umbrella policy was ambiguous due to the fact that the declarations page stated that there was product liability coverage and the policy denied coverage through a structural ambiguity in the language of the policy.

We reverse and remand.

**FACTS AND PROCEDURAL HISTORY**

Palmor is engaged in the business of designing and manufacturing a machine called a Trac-Vac, which was sold to the general public for the purpose of vacuuming mulched leaves, grass, sticks, and other yard debris, storing the mulched debris, and removing the debris. CBD and Northhampton are engaged in the business of sales and service of lawn and garden equipment. CBD is a distributor for Palmor, and Northhampton is a customer of CBD. Northhampton purchased products, including the Trac-Vac, manufactured by Palmor and distributed through CBD. There were no written contracts or agreements between Palmor, CBD, and Northhampton.

In 2004, Gary purchased a Model 580 Trac-Vac lawn and leaf vacuum, manufactured by Palmor from Northhampton in Pennsylvania. On November 2, 2009,

2

Gary was using the Trac-Vac to clear and mulch leaves in his yard when he noticed that the Trac-Vac was no longer suctioning the leaves into the trailer. Gary thought there was a clog in the system and attempted to remove the inlet hose of the outtake/intake end while the Trac-Vac was still running in order to determine where the clog was located. As he was doing this, Gary severely injured his right hand and arm.

On December 10, 2009, the Hammerstones filed a complaint in Pennsylvania against Palmor and Northhampton ("the Hammerstone Claim"); CBD was later joined as a defendant in the complaint. In their complaint, the Hammerstones alleged that Palmor, Northhampton, and CBD were each negligent when they designed, manufactured, marketed, distributed, supplied, advertised, maintained, serviced, repaired, and sold the Trac-Vac and that they failed to properly and adequately warn Gary of the hazards of the Trac-Vac, failed to properly instruct Gary on the safe use of the Trac-Vac, failed to adequately inspect the Trac-Vac for defective conditions, and failed to repair known defective conditions with the Trac-Vac. The complaint also alleged that Palmor, Northhampton, and CBD were negligent, careless, and engaged in gross negligence, recklessness, malice, and conscious disregard or indifference to the high degree of risk imposed by the Trac-Vac which constituted outrageous wanton and willful misconduct entitling Gary to recover punitive damages in addition to compensatory damages. The complaint also contained an allegation that Palmor, Northhampton, and CBD were strictly liable because the Trac-Vac was inherently dangerous.

Consolidated Insurance Company ("Consolidated") issued a general liability policy to Palmor under policy number CBP9307708 effective April 1, 2009 to April 1,

3

2010. Indiana Insurance issued an umbrella insurance policy to Palmor under policy number CU8131861 effective April 1, 2009 to April 1, 2010 ("the Umbrella Policy"). Northhampton and CBD were not named as additional insureds under the Umbrella Policy. The Umbrella Policy contains the following pertinent language:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

….

SECTION I – COVERAGE

1. Insuring Agreement

   a. We will pay on behalf of the insured those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay is limited as described in SECTION III – LIMITS OF INSURANCE. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph 2. Defense and Expense of Claims and Suits under SECTION 1 – COVERAGE.

….

2. Defense And Expenses Of Claims And Suits

   a. Defense, Investigation, And Settlement

      (1) We shall have the right and duty to defend the insured against any claim or "suit" seeking damages to which this insurance applies when:

         (a) Such damages are not covered by "scheduled underlying insurance" or "other underlying insurance"; or

         (b) The applicable limits of liability of the "scheduled underlying insurance" or "other underlying insurance" have been exhausted by payment of judgments or settlements.

4

However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.

(2) When insurance is available to the insured under any "scheduled underlying insurance" or "other underlying insurance," we will have the right and opportunity, although not the obligation, to associate with the "underlying insurers" in the defense and control of any claim or "suit" which, in our opinion, may create liability under this Coverage Part.

(3) At our discretion, we may:

(a) Investigate any "occurrence," "offense," or claim; and

(b) Settle any claim or "suit" of which we assume charge of the settlement of defense.

….

SECTION V – DEFINITIONS

….

20.    "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

….

28.    "Your product":

a.  Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

(a) You;

….

(2) Containers (other than vehicles), material, parts, or equipment furnished in connection with such goods or products.

b.  Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

PRODUCTS-COMPLETED OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

The following is added to paragraph **3. Exclusions** under **SECTION – COVERAGE**:

This insurance does not apply to:

"Bodily injury" or "property damage" included within the "products-completed operations hazard."

*Appellants' App*. at 29-30, 50-53. The declarations page of the Umbrella Policy identified the coverages provided by Indiana Insurance under the Umbrella Policy, specifically stating that there was an occurrence limit of $2,000,000 for any one occurrence or offense subject to the general aggregate and products-completed operations aggregate limits. *Id*. at 17. It also stated that there were aggregate limits of $2,000,000 each for the general aggregate limit and for products-completed operations aggregate limit. *Id*. Additionally, the declarations page listed the forms and endorsements that were made a part of the policy, which included form number "14-95 -0204 EXCLUSION-PRODUCTS-COMPLETED OPERATIONS HAZARD." *Id*.

Palmor notified Indiana Insurance and Consolidated of the Hammerstone Claim. Consolidated, as the primary insurer, accepted the defense of Palmor, but Indiana Insurance issued a notification reserving its right to deny coverage under the Umbrella Policy due to the products-completed operations hazard that it stated was excluded under the Umbrella Policy language. On December 17, 2009, Northhampton sent correspondence to Palmor requesting that Palmor accept indemnity and defend against the Hammerstone Claim on behalf of Northhampton. There was no evidence that CBD formally requested a defense and indemnity from Palmor.

On May 3, 2010, Indiana Insurance and Consolidated filed a complaint in Boone County, Indiana requesting declaratory judgment as to Palmor, Northhampton, and the

Hammerstones. On September 24, 2010, Indiana Insurance and Consolidated filed a motion for leave to file an amended complaint to add CBD as a defendant. On March 12, 2012, Indiana Insurance filed a motion for summary judgment against Palmor, Northhampton, and CBD. On June 13, 2012, it filed a motion for summary judgment as to the Hammerstones. All of the parties filed cross-motions for summary judgment against Indiana Insurance. On October 22, 2012, the trial court granted Indiana Insurance's motion for summary judgment as to the Hammerstones, and on December 3, 2012, the trial court granted Indiana Insurance's motion for summary judgment as to Palmor, Northhampton, and CBD; the trial court also denied the Appellants' cross-motions for summary judgment. The Appellants now appeal.

## DISCUSSION AND DECISION

On appeal from a grant of summary judgment, our standard of review is the same as that of the trial court. *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.,* 832 N.E.2d 559, 562 (Ind. Ct. App. 2005). We stand in the shoes of the trial court and apply a *de novo* standard of review. *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 695 (Ind. Ct. App. 2006). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.,* 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *Wilcox Mfg.*, 832 N.E.2d at 562. We view the pleadings and designated materials

8

in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied.*

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Cox*, 848 N.E.2d at 695-96. Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id.* We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

In this case, the parties filed cross-motions for summary judgment. However, the fact that cross-motions for summary judgment were made does not alter our standard of review. *Mahan v. Am. Standard Ins. Co.,* 862 N.E.2d 669, 676 (Ind. Ct. App. 2007), *trans. denied.* "Instead, the reviewing court must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Id.*

The Appellants argue that the trial court erred when it granted summary judgment in favor of Indiana Insurance and denied their cross-motions for summary judgment. They contend that it was error to find that the Umbrella Policy unambiguously denied coverage because the Umbrella Policy was actually ambiguous as to the coverage sought

9

here. The Appellants allege this ambiguity existed because the declarations page clearly stated that the Umbrella Policy included coverage for products-completed operations hazard, but that later the Umbrella Policy language stated that the insurance did not apply to injuries and damages included within the products-completed operations hazard. Because there is an ambiguity in the Umbrella Policy, the Appellants assert that it should be construed against the insurer, Indiana Insurance, and that coverage should be found to exist.

The interpretation of an insurance policy is primarily a question of law and, therefore, is a question particularly suited for summary judgment. *Id.* (citing *Lake States Ins. Co. v. Tech Tools, Inc.*, 743 N.E.2d 314, 318 (Ind. Ct. App. 2001)). "Where there is an ambiguity, policies are to be construed strictly against the insurer." *Lake States Ins.*, 743 N.E.2d at 318. "An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Allstate Ins. Co. v. Bradtmueller,* 715 N.E.2d 993, 997 (Ind. Ct. App. 1999), *trans. denied.* An ambiguity does not exist, however, merely because the parties favor a different interpretation. *Mahan,* 862 N.E.2d at 676. Where terms are unambiguous, they should be given their plain and ordinary meaning. *Id.* (citing *Farmers Ins. Exch. v. Smith,* 757 N.E.2d 145, 149 (Ind. Ct. App. 2001), *trans. denied*). A court should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.*

Here, the declarations page of the Umbrella Policy, under the "Limits of Insurance" section, stated that the aggregate limit for "Products-Completed Operations"

10

was $2,000,000. *Appellants' App*. at 17. The Umbrella Policy's language defines "Products-Completed Operations Hazard" as "bodily injury" and "property damage" occurring away from the insured's premises and arising out of "your product" or "your work" subject to several limited exceptions that do not apply in the present case. *Id*. at 50-51. Included in the Umbrella Policy is an endorsement which changes the Umbrella Policy, entitled the "Products-Completed Operations Exclusion." *Id*. at 53. This endorsement modifies the insurance coverage in the Umbrella Policy by stating, "This insurance does not apply to: 'Bodily injury' or 'property' damage included within the 'products-completed operations hazard.'" *Id*. Thus, the Umbrella Policy states that it both provides $2,000,000 of coverage for products-completed operations and that the insurance does not apply to products-completed operations hazard injuries. As a result, the Umbrella Policy is inherently ambiguous.

Indiana Insurance argues that the declarations page actually clearly and unambiguously states that the products-completed operations hazard is excluded from coverage and that, therefore, the Appellants' argument fails. However, we disagree. We believe that this language stating that there is an exclusion for products-completed operations hazard actually further demonstrates the inherent ambiguity in the Umbrella Policy. When taking this language into consideration, the information found on the declarations page both provides $2,000,000 of coverage for products-completed operations and then states that such coverage is excluded. We find this to make the Umbrella Policy inherently ambiguous.

Finding an ambiguity in the Umbrella Policy, we must construe the Umbrella Policy strictly against the insurer. *Lake States Ins.*, 743 N.E.2d at 318. Construing the Umbrella Policy against Indiana Insurance, we conclude that there is coverage for Palmor as to products-completed operations claims as a matter of law. Therefore, the trial court erred in granting summary judgment in favor of Indiana Insurance and in denying the Appellants' motion for summary judgment. We reverse the trial court's order and remand for proceedings consistent with this opinion, including findings by the trial court as to whether Northhampton and CBD qualify as indemnitees of Palmor under the Umbrella Policy and whether Northhampton, CBD, and the Hammerstones have assignee rights as part of the Hammerstone Claim.

Reversed and remanded.

VAIDIK, J., and PYLE, J., concur.