## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 24 2015, 8:58 am
CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANTS**

Christopher J. McElwee
Monday Jones & Albright
Indianapolis, Indiana

**ATTORNEY FOR APPELLEES**

Steven M. Crell
Cohen Garelick & Glazier
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis Gifford and Mary Gifford, *Appellants-Plaintiffs,* v. Jeffrey Wicks and James Ector, *Appellees-Defendants.* | August 24, 2015 Court of Appeals Case No. 49A05-1409-PL-427 Appeal from the Marion Superior Court The Honorable David A. Shaheed, Judge Cause No. 49D01-1001-PL-1771 |

**Kirsch, Judge.**

[1] Dennis Gifford ("Gifford") agreed to sell his stock in a company called Face Off, Inc. d/b/a Karma Records, Inc. ("Face Off") to Jeffrey Wicks ("Wicks") and James Ector ("Ector"), and to that end the parties executed a stock purchase agreement and various promissory notes. Disputes arose, and Gifford and his wife Mary Gifford (together, "the Giffords") filed a lawsuit against

Wicks, Ector, and Face Off. Following entry of summary judgment in favor of Wicks and Ector, the Giffords now appeal and raise the following restated issue: whether the trial court erred when it granted summary judgment in favor of Wicks and Ector on the basis that the claims against them were barred by the applicable six-year statute of limitations.

[2] We reverse and remand.

## Facts and Procedural History

[3] On April 2, 2003, Gifford, Wicks, Ector, and Face Off entered into a stock purchase agreement ("the Stock Purchase Agreement"), whereby Gifford agreed to sell fifty shares of Face Off to Wicks and Ector for $77,300.00.[1] The Stock Purchase Agreement provided that Wicks and Ector would each pay Gifford $38,650.00 payable in 240 equal monthly installments of principal and interest "commencing one year from the date of [the] Agreement," *i.e.*, April 2, 2004. *Appellants' App*. at 72. The Stock Purchase Agreement also required Wicks and Ector to execute an individual promissory note for the payment of the agreed purchase price.

[4] In accordance with this, Wicks and Ector each executed on April 2, 2003, a promissory note ("the Wicks/Ector Notes") payable to Gifford[2] in the amount of $38,650.00. Face Off executed an Absolute Guaranty of those promissory

---

[1] Gifford's wife, Mary Gifford ("Mary"), was not a party to the Stock Purchase Agreement.

[2] Mary was not a payee on the Wicks/Ector Notes.

notes, and it also conveyed a security interest and executed a security agreement to secure the payment of the Wicks/Ector Notes. The Wicks/Ector Notes were identical in form, and they required Wicks and Ector each to pay Gifford in 240 equal monthly installments of principal and interest in the amount of $510.15, "beginning on the date that is one month from the date of the execution of this Note[.]" *Id.* at 53-54. Thus, the first installment under the Wicks/Ector Notes was due May 2, 2003. The Wicks/Ector Notes each contained an acceleration clause, which stated:

> In the event of a default in payment of any payment when due, the entire unpaid balance of principal and interest shall become due and payable immediately without notice, at the election of the holder hereof.

*Id.*

[5] On April 21, 2003, Face Off executed a promissory note ("the Face Off Note") payable to the Giffords in the principal sum of $35,103.56. The Face Off Note was payable in ten annual installments of interest only, at the prime interest rate against the unpaid balance, commencing one year after the execution of the Face Off Note, *i.e.*, April 21, 2004. The Face Off Note provided that, after the payment of the ten annual installments of interest, Face Off would pay the Giffords as follows:

> One hundred twenty (120) equal monthly installments of principal and interest @ 5% rate in the amount of THREE HUNDRED AND SEVENTY TWO and 33/100 ($372.33) DOLLARS beginning on the date that is ten years from the execution of this Note and payable thereafter on the same day of each of the [119] immediately succeeding calendar months.

*Id.* at 58.  The Face Off Note allowed prepayment in full or in part at any time without penalty.  *Id.*

[6]  It is undisputed that Gifford received monthly payments from Face Off's bank account in the amount of $670.00 from May 2004 through at least October 2006.  However, according to Gifford, he stopped receiving payments in July 2008, and, about a year later, on July 21 2009, the Giffords, by counsel, sent a letter to Wicks and Ector indicating that they had not received payment "under the promissory notes" and demanding payment pursuant to the acceleration clause of the three promissory notes.  More fully, the letter to Wicks and Ector stated, in part:

> For reasons that are not completely clear, *your performance of your obligations under the promissory notes stopped over a year ago* and no payment has been received while the interest continues to accrue.  By our calculation, your total current debt to the Giffords is [$176,908.98].  This number includes the principal and interest as well as the late fees that the promissory notes call for.

*Id.* at 55 (emphasis added).  The letter requested payment within thirty days from the date of the letter.

[7]  Because the matter was not resolved, the Giffords filed a four-count complaint on January 5, 2010.  In Count I of the complaint, Gifford sought relief against Wicks and Ector; the remaining counts sought relief against Face Off.[3]  As part

---

[3] According to the record before us, Face Off was administratively dissolved in December 2007.  *Appellants' App.* at 17; *see also Tr.* at 35 (counsel stating Face Off "is out of business").

of their affirmative defense, Wicks and Ector stated that Gifford's claims were barred by the six-year statute of limitations applicable to promissory notes found in Indiana Code section 34-11-2-9.

[8] On July 11, 2011, Wicks and Ector filed a motion for summary judgment, arguing that they were entitled to summary judgment because the six-year statute of limitations on Gifford's claims for breach of the Wicks/Ector Notes had expired, and, therefore, the claims against them for breach of promissory notes was time barred under Indiana Code 34-11-2-9. Their argument was that Wicks and Ector never made any payments pursuant to the Wicks/Ector Notes, and thus default occurred in May 2003 (when the first payment was due). Because Gifford did not seek to enforce the acceleration clause until July 2009, which was more than six years after default, the claim was barred by the applicable six-year statute of limitations. With regard to the monthly $670.00 payments, Wick and Ector argued in their motion for summary judgment that the $670.00 payments were made by Face Off pursuant to the April 21, 2003 Face Off Note, which "reflects a separate and unrelated indebtedness of Face Off to Gifford and Mary." *Id*. at 25; *see also Appellees' Br*. at 6 ("This Note was unrelated to the Stock Purchase Agreement and was unrelated to the notes signed by Wicks and Ector."). That is, their position was that the $670.00 payments from Face Off had nothing to do with the Wicks/Ector Notes.

[9] In support of their motion for summary judgment, Wicks and Ector designated an accounts payable ledger that reflected monthly payments by Geaux

Enterprises ("Geaux"), the successor company to Face Off,[4] in the amount of $670.00 from May 2004 through October 2006, payable to Gifford. *Appellants' App.* at 33-34. They also submitted affidavits by Wicks and Ector, in which each of them averred that he never made any payment on the Wicks/Ector Notes, and the $670.00 payments received by Gifford were from Face Off pursuant to the April 21, 2003 Face Off Note. *Id.* at 30-31, 59.

[10] The Giffords responded to the motion for summary judgment, arguing in their motion that "Wicks and Ector began to pay as promised on May 2, 2003 and made substantially all payments until July 2008." *Id.* at 64. Once Gifford "realized" that Wicks and Ector were not going to make any more payments, he hired an attorney and demanded full payment on the three promissory notes, *i.e.*, the Wicks/Ector Notes and the Face Off Note. *Id.* In opposing the summary judgment, the Giffords maintained that they stopped receiving payment in 2008, they invoked the acceleration clause in July 2009, and their January 2010 complaint was well within the six-year statute of limitations. *Id.* at 66. Alternatively, they argued that there were "multiple issues of material fact" that precluded summary judgment in favor of Wicks and Ector, including whether, as claimed, Wicks and Ector had made no payments on the Wicks/Ector Notes. *Id.* at 65. In support of their opposition, the Giffords designated, among other things, the demand letter of July 21, 2009, sent to

[4] In our decision, we will refer to Face Off, Geaux, or both, as is applicable.

Wicks and Ector, referencing the April 2, 2003 Wicks/Ector Notes and stating "your performance of your obligations under the promissory notes stopped over a year ago[.]" *Id*. at 93. They also designated an affidavit of Gifford, in which he stated, "I invoked the acceleration clauses of all three Promissory Notes and demanded payment in full on July 21, 2009." *Id*. at 70. The Giffords also designated an exhibit that reflected their calculations of the "Outstanding Amounts Due" on the three promissory notes. *Id*. at 96. The exhibit credited Wicks and Ector with each having paid $5,215.25 on the principal of the Wick/Ector Notes, and did not credit Face Off with having made any payments, such that the entire principal amount of $35,103.56 of the April 21, 2003 Face Off Note was still due and owing. *Id*.

[11] Following a hearing, the trial court granted summary judgment in favor of Wicks and Ector as to Count I of the complaint in October 2011. The Giffords, asserting that the decision was a final appealable judgment, filed a motion to correct error on November 23, 2011. They claimed, among other things, that there was "a material factual dispute as to the source of the [$670.00 monthly] payments and the obligation which they were intended to satisfy." *Id*. at 104. The trial court held a hearing in January 2012 and denied the motion to correct error that day.

[12] Almost one year later, in January 2013, the Giffords filed a Motion to Reconsider Summary Judgment Order, asking the trial court to reconsider its summary judgment in favor of Wicks and Ector. In contrast to their position when seeking a Motion to Correct Error, the Giffords asserted that the order on

summary judgment was not a final appealable order, and was *in fieri*, and thus the trial court still retained the authority to review and modify its prior summary judgment order. In support of the Motion to Reconsider, they submitted, among other things, another affidavit by Gifford stating that the $670.00 per month that Face Off and/or its successor Geaux began paying him in May 2004 was comprised of (1) interest on the April 2, 2003 Wicks/Ector Notes and (2) interest on a separate $20,000 loan that Gifford had made to Geaux on April 28, 2004. *Id*. at 114. As evidence of this assertion, the Giffords submitted a 2007 Internal Revenue Service 1099-INT tax form, received by the Giffords from Geaux, reflecting that Geaux had paid Gifford $510.15 per month during 2007, and a portion of that payment was comprised of interest on the Wicks/Ector Note. The 2007 1099-INT form stated, "Total Interest Paid in 2007 for Ector & Wicks Notes" was $3,417.27. *Id*. at 116. Gifford's affidavit also stated that the $670.00 was paid from May 2004 through July 2008, and he provided copies of two $670.00 checks from Geaux to Gifford issued in June and July 2008. *Id*. at 102, 115.

[13] Wicks and Ector filed an Objection to the Motion to Reconsider, arguing, first, that the Giffords were estopped from taking the position that the summary judgment was *in fieri*, and susceptible to revision, because the Giffords had previously argued that the summary judgment was a final order at the time that they filed a motion to correct error, upon which they received a hearing. Second, Wicks and Ector asserted that the Giffords should be precluded from submitting additional evidence more than a year after the summary judgment

decision was issued, especially when that evidence was not newly discovered and was available at the time of the summary judgment hearing. The trial court denied the Giffords' Motion to Reconsider in March 2013.

[14] In December 2013, the Giffords filed a motion for summary judgment against Face Off with respect to Count IV of the complaint, asserting that Face Off had failed to pay as promised under the April 21, 2003 Face Off Note and claiming that the $670.00 payments they received from Face Off/Geaux from May 2004 through October 2006, which totaled $20,100.00, were attributable to the Wicks/Ector Notes. Face Off opposed the motion, maintaining that genuine issues of material fact existed concerning if and to what extent Face Off was or remained liable to the Giffords on the Face Off Note. The trial court granted summary judgment in favor of the Giffords, held a damages hearing, and thereafter entered judgment in favor of the Giffords and against Face Off in the amount of $260,729.94, which included the entire $35,103.56 principal balance and thus did not credit Face Off with having made any payment on the Face Off Note.[5] The trial court entered final judgment, and the Giffords now appeal.

---

[5] We observe that the trial court's grant of summary judgment in favor of Wick and Ector effectively was a determination that the $670.00 payments were payments from Face Off/Geaux on the April 21, 2003 Face Off Note, not payments on the Wicks/Ector Notes. However, the trial court's subsequent decision on damages, rendering summary judgment in favor of the Giffords and against Face Off in the amount of $260,729.94, does not credit Face Off/Geaux with having made any payment on the April 21, 2003 Note. As a result, it appears that the two summary judgment orders are inconsistent with one another.

# Discussion and Decision

When reviewing a summary judgment ruling, we apply the same standard as the trial court. *Auto-Owners Ins. Co. v. Harvey,* 842 N.E.2d 1279, 1282 (Ind. 2006). Summary judgment is appropriate only where "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We view the pleadings and designated materials in the light most favorable to the non-moving party. *FLM, LLC. v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.,* 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied*. Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id*. (citing *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*). We may affirm a summary judgment ruling if it is sustainable on any legal theory or basis found in the evidentiary matter designated to the trial court. *W. Am. Ins. Co. v. Cates,* 865 N.E.2d 1016, 1020 (Ind. Ct. App. 2007), *trans. denied.* However, we carefully review a grant of summary judgment in order to ensure that a party was not improperly denied his or her day in court. *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1156 (Ind. Ct. App. 2010).

### *Stock Purchase Agreement*

[16] The Stock Purchase Agreement required monthly payments beginning one *year* from April 2, 2003.[6] Thus, the earliest that default under the Stock Purchase Agreement could have occurred is April 2, 2004. Indiana Code section 34-11-2-9 provides, in relevant part, "An action upon promissory notes, bills of exchange, or other written contracts for the payment of money executed after August 31, 1982, must be commenced within six (6) years after the cause of action accrues." Six years from the April 2, 2004 earliest-default date is April 2, 2010, and the Giffords filed their complaint several months before that date, in January 2010.

[17] On appeal, the Giffords contend that "to the extent that Count I of the complaint alleges both the breach of the stock purchase agreement and of the Wicks and Ector promissory notes as bases for relief, summary judgment as to all of Count I of the complaint was error." *Appellants' Br*. at 7. Wicks and Ector maintain that Count I of the complaint sought relief only for breach of the promissory notes, not the Stock Purchase Agreement. *Appellees' Br*. at 2, 5.

[18] We recognize that the complaint was titled "Verified Complaint on Promissory Notes, Absolute Guaranty and Security Agreement" and, therefore, does not on

---

[6] The Stock Purchase Agreement required monthly payments beginning one *year* from April 2, 2003, *i.e.*, April 2, 2004, whereas the Wicks/Ector Notes required monthly payment starting one *month* after April 2, 2003, *i.e.*, May 2, 2003.

its face indicate an alleged breach of the Stock Purchase Agreement. *Appellants'*
*App.* at 12. However, the text of Count I specifically refers to the April 2, 2003
execution of the Stock Purchase Agreement, and its terms, including the
requirement that payment in 240 monthly installments was to commence on
May 2, 2004. The next paragraph alleges, "That the Defendants have failed to
make the payments as required by the instrument and are in breach of the
same." *Id.* at 13 (paragraphs 6 and 7). Thereafter, the complaint refers to the
execution of the Wicks/Ector Notes, their terms, and the Giffords' demand of
payment under the Notes via the July 21, 2009 letter. It then alleges breach of
the Wicks/Ector Notes. *Id.* at 13-14 (paragraphs 8-12). As Wicks and Ector
assert, the complaint's demand or prayer for relief seeks recovery on the
promissory notes, but does not mention the Stock Purchase Agreement.
However, given the language of Count I of the complaint, we find that, at a
minimum, there exists a question of fact on the issue of whether the Giffords
also seek relief for breach of the Stock Purchase Agreement. Therefore, we find
that summary judgment in favor of Wicks and Ector on the entirety of Count I
was in error.

### *Wicks/Ector Promissory Notes*

[19] The Giffords also assert that the trial court erred when it granted summary
judgment in favor of Wicks and Ector on the claim alleging breach of the
Wicks/Ector Notes. The trial court granted summary judgment on the basis
that the claim was filed beyond the applicable six-year statute of limitations
found in Indiana Code section 34-11-2-9. Where, as here, an installment loan

contract or promissory note has an optional acceleration clause, by which a creditor may, but is not required to, declare all future installments on the loan immediately due and payable after a debtor's default, the statute of limitations to collect the entire debt does not begin to run immediately upon the debtor's default, but when the creditor exercises the optional acceleration clause. *Smither*, 919 N.E.2d at 1160 (citing *Griese-Traylor Corp. v. Lemmons*, 424 N.E.2d 173, 183 (Ind. Ct. App. 1981)). However, a creditor may not wait until after the statute of limitations has passed before making demand for full and immediate payment of a debt, as this is *per se* an unreasonable amount of time to wait before invoking an optional acceleration clause. *Id.* at 1161-62 (summary judgment for debtor proper where credit card bank waited more than six years after debtor's last payment before invoking acceleration clause to demand full and immediate payment).

[20]     In seeking summary judgment, Wicks and Ector maintained that they never made any payment on the Wicks/Ector Notes, which required payment to begin in May 2003, and thus their default occurred in May 2003. Therefore, they argued, the July 2009 attempt to accelerate was more than six years after the default, which was an unreasonable delay, and pursuant to *Smither*, was barred by the statute of limitations. The trial court agreed. On appeal, Gifford argues that the trial court erred in granting summary judgment because he was receiving payment through July 2008, and, after determining that he was not going to receive further payment, his attorney sent a letter in July 2009 invoking the acceleration clause of the three promissory notes, and the 2010 complaint

was well within the six-year time frame. He also argues that, at a minimum, genuine issues of material fact remain that preclude summary judgment in favor of Wicks and Ector on the Wicks/Ector Notes.

Wicks and Ector urge that summary judgment was proper because (1) their affidavits, in which each swore that he did not make any payments under the April 2, 2003 Wicks/Ector Notes, established that they defaulted in May 2003, when their first payment was due, and (2) Gifford did not designate any evidence that identified or created any genuine issues of material fact regarding their nonpayment on their Notes. We disagree. While the Wicks and Ector affidavits stated that they personally did not make payment on their Notes, this does not establish that *no* payment was made on the Wicks/Ector Notes or that the default occurred in May 2003. Furthermore, the Giffords, in opposition to summary judgment, designated the July 2009 letter to Wicks and Ector stating that "performance of your obligations under the promissory notes stopped over a year ago," suggesting that the Giffords had been receiving payment on the Wicks/Ector Notes – from someone, in some fashion – through July 2008. *Appellants' App.* at 93. The Giffords also designated an accounting of "Outstanding Amounts Due" under the three promissory notes as of July 2011, and that exhibit credited Wicks and Ector with each having paid $5,215.25, but it did not credit Face Off with having made any payments under its April 21, 2003 Note. *Id.* at 96.

Wicks and Ector seem to suggest that, given that the payments received by Gifford were *not* in the amount of $510.15, as provided in the Wicks/Ector

Notes, we should therefore infer that the $670.00 payments were made on the Face Off Note. However, the $670.00 monthly payments were not consistent with the terms of the Face Off Note, which required annual payments of interest only for the first ten years following the execution of the Note, not monthly payments. We also observe that although the Face Off Note was payable to the Giffords, the accounts payable ledger, designated by Wicks and Ector, reflects that the $670.00 payments were made to Dennis Gifford, who was payee on the Wicks/Ector Notes. Thus, the $670.00 monthly payments were not entirely consistent with the terms of either the April 2, 2003 Wicks/Ector Notes (which required payment to begin one month after execution, on May 2, 2003) or the April 21, 2003 Face Off Note (which required payment to begin one year later, on April 21, 2004). Construing the inferences in favor of the non-moving party, as we must do, we find that genuine issues of material fact exist regarding payment on the Wicks/Ector Notes, thus precluding summary judgment, including: whether Face Off/Geaux was making monthly payments on behalf of Wicks and Ector, and, if so, in what amount(s); what portion of the payment, if any, was applicable to which Note(s); and for what period of time payments were made, and to whom. Consequently, summary judgment in favor of Wicks and Ector on their promissory notes was in error.[7]

---

[7] Because our decision was based upon the materials that were originally designated to the trial court at the summary judgment stage, we do not reach Wicks and Ector's arguments that the Giffords should have been

Reversed and remanded.

Vaidik, C.J., and Bradford, J., concur.

---

precluded under estoppel principles from seeking subsequent reconsideration of the summary judgment order or that the Giffords should not have been permitted to submit additional designated evidence that was available, but not submitted, at the original summary judgment stage of litigation.